Illinois Tuberculosis Association, Appellee, v. Springfield Marine Bank, Appellant.

Gen. No. 8,905.

Opinion filed October 10, 1935.

CASSELS, POTTER & BENTLEY, of Chicago, and CARL A. SORLING, of Springfield, for appellant; RALPH F. POTTER, LESLIE H. VOGEL and E. DOUGLAS SCHWANTES, all of Chicago, of counsel.

BROWN, HAY & STEPHENS, of Springfield, for appellee; R. ALLAN STEPHENS and ROBERT A. STEPHENS, JR., of counsel.

MR. PRESIDING JUSTICE DAVIS delivered the opinion of the court.

The Illinois Tuberculosis Association, plaintiff appellee, recovered a judgment in an action at law against the Springfield Marine Bank, defendant appellant, in the circuit court of Sangamon county, to reverse which defendant prosecutes this appeal.

Plaintiff alleges in its complaint that from January 4, 1933, until February 16, 1934, it deposited with defendant bank more than $26,721.80, and that on the latter date defendant was indebted to it in excess of $3,077.04 and that on demand the defendant refused to pay said sum to plaintiff.

The defendant, the Springfield Marine Bank, answered stating that the amount deposited was $26,121.80 and averred that the said sum of $3,077.04 together with other amounts had been withdrawn prior to November 6, 1933, by checks of plaintiff and that on the dates of plaintiff's demand the balance was $142.18. By amendment to its answer it is alleged that during the period stated in the complaint the defendant had on or about the first day of each month issued a statement of the account between the parties showing correctly the amount of monies deposited by the plaintiff with the defendant and the amounts of money withdrawn by the plaintiff from its account and that the defendant delivered such statements, together with all the checks charged against the plaintiff's account to the plaintiff on or about the date of the issuance of the statements and that at no time prior to November 6, 1933, did the plaintiff make any complaint or objection to the said statements of account.

The Illinois Tuberculosis Association is a charitable corporation in the State of Illinois, an affiliation of 101

county associations who elect a board of directors of 83, which in turn elects an executive committee or board of 13. The officers consist of a president, treasurer and an executive secretary who is the only salaried officer of the association. The executive office of the association is in Springfield. Dr. Edward S. Murphy was president, George E. Keys was treasurer until September, 1933, when he was succeeded by Dr. J. P. Denby, and W. P. Shahan was executive secretary.

During 1933 the association did their banking business with the Springfield Marine Bank and maintained a checking account. All checks that were issued required the signatures of the president, treasurer and executive secretary. The checks were drawn on the Springfield Bank and were first signed by the executive secretary at Springfield and were then mailed to the president who resided in Dixon, Illinois, with bills and voucher statements attached, and after being signed by him they were sent by him either to the treasurer who resided in Springfield or else back to the Springfield office, and after being signed by the treasurer were mailed or delivered to the payee.

The executive secretary was in charge of the office of the plaintiff and was responsible to the executive board or board of directors. He employed the help to assist him, which consisted of a personal secretary and office secretary and Joseph Roscetti who was the bookkeeper during 1933. The accounts of the association were audited every year covering the fiscal year which was from January 1 to December 31. The board held executive meetings quarterly.

The checks drawn by plaintiff on its checking account were presented for payment in one of three ways: By presentation to the paying tellers of whom there were two in the bank at that time, J. P. Rothermel and Oscar Pritchett, by mail and through the clearing house. The checks that came by mail or

through the clearing house went to the central desk and were examined as to signatures by the chief clerk, who up to May, 1933, was George W. Bettinghaus and from then on C. G. Lambert.

Check No. 1966 dated October 31, 1933, for $92.05, payable to W. P. Shahan and signed by him as executive secretary, was mailed to Dr. Murphy and from his office to Dr. Denby and then back to the Springfield office. W. P. Shahan was away at the time on a business trip and when the check was returned to the office it was supposed to have been put in the safe awaiting his return. When the check was not found in the safe and when Roscetti did not appear at work on that day, November 6, Shahan went over to the bank and found the check upon which the name of W. P. Shahan was forged with the name of Joseph Roscetti below that of the name W. P. Shahan. This check had not been charged to the account of the association and payment was stopped on the check.

An audit was made of the books of the association, which was begun on November 6, 1933. This audit covered the period from January 31, 1933, to November 6, 1933. The audit disclosed that there had been about $3,077.04 worth of checks paid by the bank which were not authorized by the association. The audits made of the books for the years 1930, 1931 and 1932, which had been kept by Mr. Roscetti showed that the accounts were in good condition and no irregularities were found by those audits prior to 1933.

The defendant bank during the period that this account was running issued statements to its customers on or about the first of each month, and the statements of the account of plaintiff with the bank were delivered to Mr. Roscetti. The defendant refused to pay the $3,077.04 demanded by plaintiff for the reason that it claimed the balance of plaintiff was only $142.18.

A jury trial was demanded by plaintiff and upon a trial of the cause the jury returned a verdict finding

the issues for the plaintiff and assessing its damages at the sum of $4,194.13. A judgment was entered upon the verdict and thereafter and within 10 days an order was entered giving the defendant time within which to file its motion for a new trial and its motion for a judgment notwithstanding the verdict. The court denied the motion of the defendant for a new trial. The motion of defendant for judgment *non obstante veredicto,* which assigned as reasons the want of evidence to sustain the verdict was overruled by the court.

It is insisted by defendant that its own freedom from negligence and its affirmative defense of estoppel having been established by uncontradicted and undisputed evidence, the trial court erred in refusing to grant its motion for a directed verdict in its favor and in refusing to enter judgment for the defendant notwithstanding the verdict.

The evidence discloses that the chief clerks at the central desk, during the time this account of plaintiff was running, Bettinghaus until May, 1933, and Lambert during the balance of the time, had the general supervision of the bookkeeping of the bank and also had charge of the central desk where all the checks that came by mail or through the clearing house were examined as to being regular on their face and as to signatures. A great number of checks each day were passed upon. Bettinghaus while in charge of the central desk examined from fifteen hundred checks on some days to several thousand on other days, and Lambert while chief clerk examined from five to six thousand checks a day. From the very nature of their duties and the great number of checks passing through their hands every day it appears that not sufficient attention could be given each item. From the number of forged checks that passed them in this account of plaintiff it will be seen that they could not have made the careful examination that defendant insists was made of all checks which come to the bank through the

mail or clearing house. The evidence also discloses that plaintiff's Exhibit F 117, a genuine check issued by plaintiff, but without the signature of the president, containing only two signatures, was passed by Lambert, a defect that could be instantly detected by an examination of the check.

The evidence also discloses that Joseph Roscetti had been in the employ of the association for some time. He had charge of the books and assisted generally in making up the bills and vouchers that accompanied the checks, and also typed the checks and after they were signed by the executive secretary he would mail them to the president. The books of the association were audited each year and were found correct at the times the audits were made for the years 1930, 1931 and 1932, years in which Roscetti was the bookkeeper. The statements of account and canceled checks each month were delivered to Mr. Roscetti. The board of directors held quarterly meetings during each year. So far as it appears from the evidence no person other than Roscetti checked over the bank statements and canceled checks except on the occasions when the books were audited. A corporation can act only through its officers, agents and employees. All of the forgeries occurred after the audit of the books for the year 1932 was made in January, 1933. The duties of the executive secretary required his absence from his office about 50 per cent of his time.

The defendant in its reply brief admits that it was required to show that it was not negligent in paying forged checks, and states: that is admitted now, was admitted on the trial of the case and in our original brief.

A motion to instruct the jury to find for the defendant is in the nature of a demurrer to the evidence, and the rule is that the testimony demurred to, together with all reasonable inferences arising therefrom, must

be taken most strongly in favor of the plaintiff. *Mc-Cune v. Reynolds*, 288 Ill. 188. It is not the province of the trial judge, on such motion, to weigh the evidence and determine where the preponderance is. Neither the trial court in the first instance, nor the court of review, has anything to do with the question of the preponderance of the evidence or the credibility of the witnesses when considering this question. *Geiger v. Geiger*, 247 Ill. 629.

In the case of *Shannon v. Nightingale*, 321 Ill. 168, the court said: "It is a question of law whether there is any evidence tending to prove the allegations of the plaintiff's declaration, and it is a question of fact, where there is such evidence, whether it is sufficient to sustain such allegations. The former is a question for the court; the latter a question for the jury, subject to revision by the court on motion for a new trial. Therefore the court may not properly take the case from the jury and direct a finding for the defendant when there is some evidence tending to prove every essential allegation of the plaintiff's declaration, merely because, in the judgment of the court, the weight of the evidence in support of some material allegation is not sufficient to sustain a verdict for the plaintiff. If the evidence in support of the plaintiff's allegations is sufficient to make a *prima facie* case, the court is not authorized to direct a verdict for the defendant because of evidence of contrary facts tending to an opposite conclusion. On the motion to direct a verdict only that evidence can be considered which is in favor of the party against whom the motion is directed, and that evidence must be considered in the light most favorable to that party, together with all legitimate inferences which may be drawn from it in his favor."

In the case of *Nelson v. Stutz Chicago Factory Branch*, 341 Ill. 387, it is said by our Supreme Court that: "The question of law presented to the court

upon a motion at the close of all the evidence is whether, when all the evidence is considered, together with all reasonable inferences from it in its most favorable aspect to the party against whom the motion is directed, there is a total failure to prove a necessary element of his case.'' The Supreme Court in its opinion in the *Nelson* case further says: ''The contention of the defendant in error is that it is the province of the jury to weigh the testimony of the witnesses, to determine the credibility and weight of the evidence and give it their belief according to their judgment. In support of this contention she relies upon the case of *Shannon v. Nightingale*, 321 Ill. 168, in which it is said: 'If the condition of the evidence at the close of the plaintiff's case does not justify an instruction for a verdict in favor of the defendant, no evidence which the defendant may introduce will justify such instruction except uncontradicted evidence of an affirmative defense. Evidence contradictory of the plaintiff's will not do it.' This language is too unguarded and should be qualified, as should also the statement that 'the question arising on this motion (to direct the verdict) is whether there is any evidence to sustain the plaintiff's side of the issue.' The question is whether there is evidence to sustain every element of the plaintiff's case necessary to be proved to sustain the cause of action. The other language quoted should be modified by the substitution for the words 'an affirmative defense' of the words 'facts consistent with every fact which the evidence of the plaintiff tends to prove but showing affirmatively a complete defense.' ''

The rule as stated in the *Nelson* case is this: If there is evidence at the close of the plaintiff's case to sustain every element of his case necessary to be proved to sustain the cause of action, no evidence which the defendant may introduce will justify an

instruction for a verdict in his favor except the uncontradicted evidence of facts consistent with every fact which the evidence of the plaintiff tends to prove but showing affirmatively a complete defense.

At the close of the plaintiff's case there was evidence to sustain every element of its case necessary to sustain the cause of action. By the evidence introduced the defendant sought to establish its own freedom from negligence and an affirmative defense of estoppel, the evidence to establish which was inconsistent with the facts that the evidence of the plaintiff tends to prove. The court did not err in refusing to direct a verdict for the defendant.

We are of opinion that the contention that the court erred in not entering a judgment for the defendant, notwithstanding the verdict, is without merit.

At common law, a judgment *non obstante veredicto* could only be entered when the plea confessed the cause of action and set up matters in avoidance of the cause of action which were, even if true, immaterial and did not constitute a defense to the action. It is a judgment for the plaintiff on the pleadings because the pleas of the defendant do not present a defense. It was only rendered on the application of the plaintiff, and was never allowed on motion of the defendant. Puterbaugh's Common Law Pleading, sec. 1103.

It is provided however by sec. 68, ¶ (3)a, of the Civil Practice Act, Cahill's Rev. St. 1933, ch. 110, ¶ 196, that at the close of the testimony either party may request the court for a directed verdict and that the court can reserve its decision thereon, and submit the case to the jury and after verdict may hear arguments for and against such request and if the court shall decide as a matter of law that the party requesting the directed verdict was entitled thereto, the court shall enter its decision on the record and order judg-

ment in accordance with such decision notwithstanding the verdict. This provision of the Civil Practice Act changes the common law rule and permits either party to move the court for judgment notwithstanding the verdict.

The court in passing upon the motion must decide, as a matter of law, that the party requesting the directed verdict is entitled thereto. This provision of the Civil Practice Act taken in connection with Rule 22 of the Rules of Practice of the Supreme Court which provides: ''The power of the court to enter judgment notwithstanding the verdict may be exercised in all cases where, under the evidence in the case, it would have been the duty of the court to direct a verdict without submitting the case to the jury,'' requires the court to be governed by the same rules in passing upon a motion for a judgment notwithstanding the verdict as govern it in passing upon a motion for a directed verdict. The trial court in passing upon this motion has no more authority to weigh and determine controverted questions of fact under the Civil Practice Act than under the Practice Act of 1907. *Capelle v. Chicago & N. W. Ry. Co.,* 280 Ill. App. 471.

The defendant further contends that it was clearly within the scope and course of Roscetti's employment with the plaintiff to examine the bank statements and canceled checks, and that all knowledge which Roscetti obtained from an examination, or might have obtained by a reasonably adequate examination, was the knowledge of the plaintiff; that even if Roscetti had been the forger, the knowledge which he obtained from a reasonable and adequate examination of the statements was within the scope of his employment, although admittedly the commission of the forgery was not, citing *Myers v. Southwestern National Bank,* 193 Pa. 1, 44 Atl. 280, and other authorities in support of its contention.

While there is some conflict in the holdings of the courts, the question has been settled adversely to the contention of the defendant by the Supreme Court of our State. It is held: To the general rule that notice to the agent is notice to the principal there is a well defined exception, that notice will not be imputed to the principal where the facts authorize the inference that the agent will conceal the information. That is the presumption where it would be detrimental to the agent's interests to disclose the facts. *Merchants' Nat. Bank v. Nichols & Shepard Co.*, 223 Ill. 41. The facts in this case come within the exception to the rule. Roscetti had reason to conceal the information that the monthly statements issued by the bank did not show the true balances, as this information would lead to the immediate detection of his forgeries.

Plaintiff insists that the defendant was guilty of negligence in handling the account of the plaintiff and that the law is that where the bank itself is guilty of negligence, particularly in regard to the examination of the depositors' checks, any negligence of the depositor in examining any statements of account or canceled checks returned to it is immaterial.

While it is true that a depositor of a bank who receives from the bank a statement of his account with the canceled checks for which credit is taken should examine the statement of his account together with the canceled checks and report to the bank within a reasonable time any errors that may be discovered and if he fails to do so would be guilty of negligence, yet if the officers of the bank before paying the forged checks failed to exercise due and reasonable care in detecting the forgeries the subsequent negligence of the depositor in failing to perform such duty would constitute no defense.

It was held in the case of *National Dredging Co. v. President of Farmers Bank,* 6 Pennew. (Del.) 580, 69

Atl. 607, that: "In every case where suit is brought by a depositor to recover from a bank money deposited by him, which the bank has paid out otherwise than in conformity with his orders, and the bank sets up the defense that it is nevertheless entitled to charge the depositor with such payments, because of conduct of the depositor subsequent to such payment, the preliminary question to be determined is whether the bank was or was not guilty of negligence in making the payments. If it were negligent, if its officers be found to have failed to exercise due and reasonable care in detecting the forgery or fraud, then the subsequent negligence of the depositor, his failure to perform his duty in examining his pass book and vouchers with reasonable care and report to the bank in a reasonable time any errors or mistakes, would constitute no defense. It is needless to cite cases in which this doctrine is explicitly stated, because they are all in accord upon this point, and the doctrine is assumed in every case where it is not stated."

In the case of *Manufacturers' Nat. Bank v. Barnes,* 65 Ill. 69, in a case where a clerk of the firm had been authorized by power of attorney lodged with the bank to draw checks in the name of the firm for 15 days and who after that period drew checks without the knowledge of the firm and appropriated the money to his own use during which time the bank book of the firm had been written up several times and as the clerk acted as bookkeeper and cashier the fact that he had been drawing checks was not made known for some time, the Supreme Court in deciding the case said:

"The bank was guilty of great negligence in paying checks of the clerk drawn after that period, and cannot be excused merely because the plaintiff failed to examine the returned checks, which he had a right to presume had been drawn by himself alone."

In the case of *Merchants' Nat. Bank v. Nichols & Co., supra,* the bank had sued a corporation depositor to recover on certain overdrafts drawn by an agent of the corporation. The defense was that the agent had no authority to sign the checks, and for that reason the bank had no right to pay the checks. The bank said the depositor was estopped to deny its liability because of its failure to examine the passbook which had been balanced and returned to the agent with the canceled checks. After citing the case of *Manufacturers' Nat. Bank v. Barnes, supra,* and other cases, it was said: "By these authorities the claim of a bank on account of the depositor's negligence is defeated by its own contributory negligence. In the case of *Leather Manufacturers' Bank v. Morgan,* 117 U. S. 96, upon which great reliance is placed, it was held that a depositor's duty is discharged when he exercises such diligence as is required by the circumstances of the particular case; that if a bank has been guilty of negligence in paying forged checks the doctrine of ratification and estoppel does not apply, and that if the bank, before paying such checks, could by proper care and skill have detected the forgery it could not receive a credit for the amount of the checks even if the depositor omitted all examination of his account."

It was also said by the court that: "The conclusive answer, however, to the claim of the plaintiff was, that it was itself negligent in not ascertaining the authority of Harte (the agent) and in paying the checks."

It is claimed by defendant that the trial court erred in refusing to admit in evidence the ledger sheets of its account with plaintiff, and in this connection it is said that the plaintiff contended it had on deposit the sum of $3,077.04 and that defendant contended the amount was only $142.18. No question is raised as to the amount of the judgment in the errors relied upon

by the defendant for a reversal of the judgment. Even if the court erred in refusing to admit the sheets in evidence the defendant was not unduly prejudiced thereby as the defense relied upon at the trial was that of estoppel and no question was raised as to the amount of the balance due plaintiff.

There is no merit to the contention of the defendant that the court erred in admitting in evidence copies of the plaintiff's voucher statements without preliminary proof to account for the absence of the original. The evidence shows that there were three copies made, one original and two carbons, and they were all treated as originals. It is not error to admit carbon copies in evidence, as all being made simultaneously are, in fact and in law, originals. *Wurlitzer Co. v. Dickinson,* 153 Ill. App. 36.

It is also insisted that the court erred in refusing to strike out the testimony of the plaintiff's executive secretary in which he testified to a conversation had with Mr. Holbrook, vice president of the bank, in which he told Mr. Holbrook that an audit had been made and that a shortage of over $3,000 was discovered due to erroneous entries, probably due to forgeries, and to which Mr. Holbrook replied that any charges made due to forgeries were the liability of the bank. He further testified that he had talked with Mr. Holbrook 15 or 20 times between November 6 and Christmas and asked him to please replenish our account; each time he replied he wanted to advise further with our attorney regarding the right of the bank to pay the money to the plaintiff. Defendant takes the position that the admission was not an admission of fact, but one of law and for this reason not admissible.

This same statement was made by Mr. Holbrook to Mr. Estes who made the audit and was not objected to by the defendant. Mr. Estes testified that he told

Mr. Holbrook that he had just completed an audit and that the result showed about $3,077.04 worth of checks, paid by the bank, which were not authorized by the association, and that they had the affidavit of the bookkeeper that they were forgeries, to which Mr. Holbrook replied that he could see no reason why the bank was not liable but that Mr. Sorling was away for a few days and upon his return the matter would be taken up in its regular manner.

The language used could be interpreted as an expression of an opinion and for that reason not admissible. On each occasion the subject was brought up Mr. Holbrook qualified his statement by saying that he wanted to advise further with their attorney regarding the right of the bank to pay the plaintiff the money. We are of opinion that the defendant was not prejudiced by the refusal of the court to strike out the testimony objected to.

Defendant also complains of the action of the court in limiting the effect of defendant's Exhibits 13, 14 and 15, which were stenographer's note books kept by Mamie Donovan Maher who was a clerk in the passbook cage in the bank and in which she wrote the name of the account of the persons to whom statements and canceled checks were delivered. She testified she delivered the monthly statements and canceled checks of the plaintiff's account to Mr. Roscetti. All that appears in the note books concerning plaintiff are the words, ''Ill. Tuberculosis,'' ''Ill. T. B.,'' and similar notations. The court overruled the objection of the plaintiff and admitted the exhibits and limited their effect to showing a delivery of the statements of account to Roscetti. We do not think the court erred in so ruling. The purpose of the offer was to verify the testimony of Mrs. Maher by a record made by herself at the time she testified she delivered the statements to Mr. Roscetti, and the effect of the ruling

was to limit the effect of the exhibits to showing a delivery to Roscetti instead of to the association, as shown by the exhibits which were in the nature of self-serving statements. The pages of the exhibits were made up of different dates with names written under such dates and there are no explanatory headings to the exhibits, and without the testimony of Mrs. Maher would be meaningless.

Defendant says: "To show delivery of the bank's statements and canceled checks to the plaintiff, the defendant offered in evidence three record books introduced in evidence as exhibits, respectively, 13 to 15 inclusive. The records on their face indicate delivery to the plaintiff. The young lady who made the records testified that she recalled giving the statements to Roscetti on the dates indicated by the records. It was one of Roscetti's duties as plaintiff's bookkeeper to obtain and reconcile the bank's statements each month. The statements themselves were found in the office of the plaintiff in November of 1933. Delivery of these statements to Roscetti was under the law delivery to the plaintiff."

Whether the delivery of the statements and canceled checks to Roscetti was a delivery to the plaintiff would depend upon the scope of the agency of Roscetti, a question of fact to be determined from the evidence, and the making of Exhibits 13 to 15 by defendant, showing delivery to the plaintiff, would in no way tend to prove that it was one of the duties of Roscetti to obtain and reconcile the bank's statements each month.

In and of themselves the exhibits did not have any reference to bank statements and canceled checks or of the delivery of the same and as used to corroborate the testimony of the witness, Mrs. Maher, were incompetent. Statements, declarations or acts of a party, in his own interest, or tending to establish his

theory of the case, or any act favorable to him, whether oral or in writing, are, as a general rule, inadmissible as evidence in his own behalf. 1 Ency. of Evidence, 383; *People v. Foster,* 288 Ill. 371.

It is further contended by defendant that it was reversible error for the court to instruct the jury that if Roscetti had an interest in concealing facts which he knew concerning the plaintiff's bank account that the plaintiff was not bound by his knowledge. It is said this instruction was improper because it assumed that there was some evidence in the record that Roscetti had an interest in concealing facts. The record fails to show that defendant specifically pointed out to the court, before the jury was instructed, that this part of the court's instruction was erroneous because it assumed that there was evidence in the record showing Roscetti had an interest in concealing facts. Only such objections as are overruled by the court may be made a ground for review. For this reason we are not authorized to consider this objection.

It is also insisted that the court erred in directing the jury to find a verdict in favor of the plaintiff if the jury found from the evidence that the defendant paid out funds of the plaintiff on unauthorized checks, because it completely ignored the defense of estoppel.

Section 67 of the Civil Practice Act before its amendment provided that instructions to a jury should be in the form of a continuous and connected narrative and not a series of separate instructions, in order that the jury would be in a position more easily to harmonize the seeming inconsistencies in the charge contained therein.

The sentence of the instruction objected to when considered alone would seem to be open to the objection that it ignored the defense of estoppel. The charge of the court to the jury when considered as an entirety is not open to such objection. After having

carefully considered the instruction given by the court we are of opinion that it fairly and fully presented the law of the case to the jury.

It is also contended that the court erred in overruling the defendant's objection to the statement, made by plaintiff's counsel in the closing argument, that no official of the defendant was present in the court room during the trial because they were ashamed of it. None of the arguments of counsel was preserved in the record.

It is claimed by counsel for plaintiff that in his closing argument counsel for defendant placed much emphasis on the testimony he had elicited concerning the excellent methods used at defendant's bank and that the argument of plaintiff's counsel was material on the issue in which the business methods of the bank were on trial whether or not any official of the bank had been in the court room during the trial.

Not having the arguments of counsel before us we are not in a position to determine the question raised. The trial court heard the arguments on both sides and was in a position to judge whether the argument of counsel for plaintiff in error was proper and considered that it was.

In his closing argument counsel for plaintiff stated: "Estes identified the audit he made and they refused to admit the audit in evidence." Objection was made to the statement of counsel that defendant refused to admit the audit in evidence, saying: "That was the ruling of the court." The court sustained the objection, saying: "That was excluded."

Plaintiff's counsel claims that he believed the argument was justified by a tirade which counsel for defendant had made in his closing argument to the effect that plaintiff had not produced all the evidence at its disposal. From the record before us we are unable to determine whether the counsel for defendant in

his closing argument may have gone outside of the record and thus induced the improper remarks of counsel for plaintiff to which the court sustained the objection. If counsel for defendant did deliberately make a statement not warranted by the record, while it would not relieve the plaintiff of the charge of deliberately making a misstatement of the record for the purpose of prejudicing the jury, a court in passing upon the objection of the defendant would take into consideration the unwarranted conduct of the defendant in his argument to the jury.

It is further contended that the apparent finding of the jury that the plaintiff was not guilty of negligence in the examination of the statements of account furnished it or that the defendant was negligent in passing plaintiff's checks presented to it for payment is manifestly against the weight of the evidence and the trial court erred in denying the defendant's motion for a new trial.

The case was submitted to the jury under proper instructions and it was the province of the jury to pass upon the facts, and we are of opinion that the jury was fully warranted in finding a verdict for the plaintiff and for that reason the trial court did not err in overruling the defendant's motion for a new trial.

Finding no reversible errors in the record the judgment of the circuit court of Sangamon county is affirmed.

*Affirmed.*