## Mary Wolever, Appellant, v. Curtiss Candy Company et al., Appellees.

### Gen. No. 39,365.

Opinion filed February 15, 1938.

JOHN E. NORTHUP and ADLER & ADLER, both of Chicago, for appellant.

IRWIN N. WALKER, of Chicago, for certain appellees; IRWIN N. WALKER and JOHN PORTER, of Chicago, of counsel.

WILSON & McILVAINE, of Chicago, for certain other appellees; J. F. DAMMANN and KENNETH MONTGOMERY, both of Chicago, of counsel.

Mr. Justice Scanlan delivered the opinion of the court.

In an action of fraud and deceit, at the conclusion of plaintiff's evidence, the trial court, on motion of defendants, instructed the jury to find all of the defendants not guilty. Plaintiff appeals from a judgment entered upon the verdict.

The first additional count of the complaint alleges that on and before March 20, 1934, Franklin H. Wolever, the husband of plaintiff, was in the employ of defendant Curtiss Candy Company as a consulting engineer; that while engaged in the performance of his duties, and in the scope of his employment, a truck, operated by defendant Torbick, was backed against him, causing a fracture of the pelvic bones, the back bone, ribs, lacerations and rupture of the liver, and shock, all of which caused his instantaneous death; that Curtiss Candy Company was operating under the Workmen's Compensation Law of Illinois and as a result of the accidental injury plaintiff was entitled to receive compensation under that law in the amount of $4,000; that defendant Karl Keefer was vice president of Curtiss Candy Company, defendant H. J. Krieger, general superintendent, and defendant Charles Hillman, supervisor of traffic and in charge of trucks; that at the time of the death, immediately thereafter, and long before the cause of death was certified to the coroner as being due to heart disease alone, Keefer, Krieger and Hillman knew of the occurrence of the accident; that Hillman saw it, and Keefer and Krieger were informed that the truck had backed into Wolever at the loading platform and that the body had fallen to the ground when it was released by the forward movement of the truck; that defendant Torbick knew of the accident whereby the decedent was killed, and was under duty, because of an ordinance of the City of Chicago, to report it to the police department; that

defendant Maryland Casualty Company was an insurer of Curtiss Candy Company against losses under the compensation law and was primarily liable to plaintiff; that by contract and custom Maryland Casualty Company investigated all claims and caused to be filed with the Illinois Industrial Commission on behalf of Curtiss Candy Company reports of all accidents; that soon after the accident Maryland Casualty Company, through its agent, was furnished with signed statements of several workmen of Curtiss Candy Company describing the accident as eyewitnesses; that Maryland Casualty Company, ''well knowing that for the purpose of cheating and defrauding the plaintiff the true facts and circumstances surrounding the death of said Wolever had been wilfully, maliciously and intentionally concealed'' from the coroner, the police department, the health department, and plaintiff; and nevertheless ''contriving and wickedly designing to assist in cheating and defrauding plaintiff out of her right to recover under the Workmen's Compensation Laws of Illinois, wilfully, maliciously, and fraudulently permitted the plaintiff to continue in her ignorance of the true cause of her husband's death and to bury him believing that he had come to a natural death by heart trouble, and thus escape payment to the plaintiff for its liability''; that Curtiss Candy Company maintained a first aid room in its plant, in charge of defendant Marie Gill, who had been employed as such for about 10 years and whose duty it was to administer first aid to all employees of Curtiss Candy Company who might be injured, and to file a history including the causes of all cases of accidental injury or death sustained by employees of Curtiss Candy Company while in the course of their employment, but that she was acting as a subordinate of Krieger; that it was the duty of Krieger and Marie Gill to ascertain the nature of the accident and the cause which resulted in

the death of Wolever, and to truthfully report it in writing to the Industrial Board of the State of Illinois; that Wolever, immediately after the accident, was taken to the first aid room; that Gill, after a brief examination, found him dead, and summoned defendant Dr. Greene by telephone; that the latter appeared a few minutes later on behalf of Maryland Casualty Company and Curtiss Candy Company and pronounced Wolever dead; that Gill and Greene pretendedly undertook to determine the actual cause of death and while so doing Keefer, Krieger, and an employee, Albert Lichardt, now deceased, came in and informed Gill and Greene that it had been reported that Wolever had met with an accident, another employee of Curtiss Candy Company informed them that he had seen a truck strike Wolever, and an employee of Lichardt informed them that an accident had been reported to Lichardt's office; that Gill, knowing Wolever was dead, but contriving and wickedly designing to assist in cheating, defrauding and tricking plaintiff out of her right to recover compensation, and in order to conceal knowledge of the accident and cause of Wolever's death, and to keep the police department and the coroner from being called in to investigate the cause of said death, knowingly, wilfully, corruptly, fraudulently and maliciously caused the police department to be notified that someone was merely sick and not dead; and Greene, contriving and wickedly designing to conceal and cover up the knowledge of the accident and the cause of death, ''knowingly, wilfully, corruptly, fraudulently and maliciously failed to report'' the death to the said authorities; that defendants caused and procured a certificate of the cause of death to be made out and reported by Abel Sandahl, ''the family physician of Wolever,'' in which the death was falsely ascribed to heart disease, with no reference to accidental causes; that defendants procured the certificate from Sandahl by knowingly, wilfully, fraudulently,

corruptly, maliciously and falsely withholding from him all the facts and circumstances of the accident, and informing him that Wolever had dropped dead from heart disease, far from the place where he was killed; that plaintiff was lulled into accepting Dr. Sandahl's statement through her trust in him, and by the high regard expressed by Curtiss Candy Company and its officers for her husband, and their sympathy and solicitude; that believing the cause of the death of her husband to be heart disease, plaintiff caused the body to be interred, on March 23, 1934; that rumors and information came to plaintiff on April 2, 1934, and on April 4, 1934, the body was exhumed, the coroner performed an autopsy, and determined that Wolever came to his death by reason of violence; that plaintiff filed a compensation claim before the Industrial Board and was allowed $3,250, which covers only the amount allowed by statute for loss of support; that upon the death of Wolever, it was the duty of Curtiss Candy Company to notify the Industrial Board in writing, and of Curtiss Candy Company and the other defendants to notify the police department and the coroner in order that the coroner might act in accordance with the law; that it was the duty of Maryland Casualty Company to send, immediately, a truthful report of the accident to the Industrial Board; that (par. 15 of complaint) defendants, well knowing the foregoing facts and circumstances, but contriving and wickedly designing, nevertheless, to cheat, defraud and trick plaintiff out of her right to recover from Curtiss Candy Company and from its insurer, Maryland Casualty Company, under the Workmen's Compensation Law of the State of Illinois, for the death of her husband, knowingly, wilfully, corruptly, fraudulently and maliciously failed to notify said police department of Chicago, said coroner of Cook county, said Industrial Board, and plaintiff of the facts and circumstances relating to the cause of Wolever's death, and knowingly, wilfully, corruptly,

fraudulently and maliciously concealed the same from said police department, from said coroner, from said Industrial Board and from plaintiff; that by reason of the wrongs to which plaintiff was subjected, as aforesaid, it was necessary for her to expend divers sums of money for the disinterment of her husband's body, for the performance of a post-mortem and the determination of the actual cause of his death, and for his reinterment; that the grief and shock which she had sustained by her belief, falsely induced, as aforesaid, that her husband had died from the inevitable effect of disease, were greatly intensified and aggravated by the disclosure that his life had been suddenly cut off, and he had come to an untimely end by accident and violence, and that the actual cause thereof had been so successfully concealed from her, as aforesaid, as to wholly deprive her of any right of recovery for her husband's death under said Workmen's Compensation Law; that in order to establish such right it was necessary to carry on an investigation to ascertain the cause of his death, and to establish her rights to recover therefor before said Industrial Board, which she did at great expense for legal and other assistance; that she was also greatly shocked by the fact that her husband's employers, who had expressed their great appreciation for him and their solicitude for her own welfare and that of her family, had participated in a plot to defeat her right to recover for her husband's death; that by reason of the wrongs to which she was subjected her health was greatly impaired and her nervous system shocked and exhausted, and she became so ill and disordered in mind and in body as to require the services of a physician from thence hitherto, and that she will continue to require medical care and attention for a considerable time; that her nervous system has continued to be highly unstable and greatly

disordered, resulting in great mental and physical pain and anguish; that her physical disabilities and impairment of health, caused as aforesaid, have prevented, and will prevent, her from enjoying the pleasure of good health and well being, and that she has been compelled to pay out, and to become liable to pay out, large sums of money in and about endeavoring to become healed of her said infirmities, caused and received as aforesaid; to the damage of the plaintiff in the sum of $15,000.

In the second additional count plaintiff adopts all of the paragraphs of the first additional count except paragraph 15, and in lieu thereof alleges that defendants, well knowing all of the facts and circumstances, but contriving and wickedly designing nevertheless to cheat, defraud and trick plaintiff out of her right to recover from the said Curtiss Candy Company and from its insurer, Maryland Casualty Company, under the Workmen's Compensation Law of the State of Illinois, for the death of her husband, knowingly, wilfully, corruptly, fraudulently and maliciously combined, confederated and conspired among themselves to keep and prevent the police department of Chicago, the coroner of Cook county, the Industrial Board, and plaintiff, from investigating and learning the actual cause of Wolever's death, and to conceal from the police department, the coroner, the Industrial Board, the health department of the City of Chicago, and plaintiff, the actual cause of Wolever's death, and falsely, wilfully, corruptly, and maliciously to make it appear to the police department, the coroner, the Industrial Board, the health department of the City of Chicago, and plaintiff, that Wolever had died solely from heart disease, and not from any external force and violence whatever. To the damage of plaintiff, both actual and exemplary, in the sum of $15,000.

When the motion for a directed verdict was presented to the trial court, the latter made the following statement to the jury:

"Gentlemen of the jury, the plaintiff has rested and the defendants have moved for a directed verdict, and in accordance with that motion the Court will instruct you to find the defendants not guilty. . . .

"While we are waiting I think it is fair that the Court should make a statement for the benefit of the jury, which has sat here now for a full week.

"This, gentlemen of the jury, is a case different in character from the average case involving injuries and death. This is not a lawsuit for the wrongful death of Mr. Wolever. There is no recovery for that sought or asked for here by the plaintiff for Mr. Wolever's death.

"This lawsuit is based upon the allegations of the plaintiff that the defendants conspired together to keep from Mrs. Wolever information that her husband's death occurred as a result of external violence and that as a result of the keeping of that information from her she suffered certain injuries.

"If I misstate this in any way please feel free to correct me.

"Mr. Northup [attorney for plaintiff]: Not only as conspirators but as joint feasors.

"The Court: Individually, jointly and as conspirators.

"Mr. Northup: Yes.

"The Court: That means, gentlemen of the jury, that there is a burden upon the plaintiff, as in every case. It is the law in the State of Illinois that a plaintiff must prove his case by a preponderance or a greater weight of the evidence before he has a right to any recovery against a defendant; so that the burden is upon the plaintiff in this case.

"First, she had to prove that Mr. Wolever did die as a result of external violence and not from heart

disease. She had to prove, secondly, that the defendants, and each of them or all of them, knew that he died as a result of external violence and not from heart disease. She had to prove, thirdly, that the defendants wilfully, intentionally and maliciously withheld that information from Mrs. Wolever; fourthly, that as a result of withholding that information from her that she suffered injury. Of course, they have not proven that he did not die from heart disease. They have not proven, if he did die from something other than heart disease, that the defendants, or any of them, wilfully withheld information, or that they ever knew it. And fifthly, they have not proven that she was injured by reason of their having withheld that information. There is, really, no occasion for the Court saying this, gentlemen, in the first place. I am not called upon to tell you nor to tell the lawyers anything after directing a verdict because, as a rule, that is all there is to it; but I feel that after twelve laymen have given their time here, sitting here for six days, they are entitled to know what has been going through our minds and why we feel we must arrive at the conclusion we have arrived at, and, further, because the lawyers who have been before me have conscientiously endeavored to bring before the Court and jury everything that was available to them. They have tried their level best and it is not their fault that the proof is lacking. It is not their fault that something impossible exists here.

''It is my judgment, which is the missing proof, that Mr. Wolever did not die from anything but heart disease, for the reason that the only evidence that is available to them is something that developed two weeks or thereabouts after he was buried. Obviously then there was a difference in the condition of the body. He was embalmed and there was no blood in his system when these other examinations were made. There is not a single syllable of testimony of any hemorrhage. Not

a bit. Of necessity, Dr. Moore, if he testified, would have to testify that he died of hemorrhage.

"Mr. Northup: Doctor who?

"The Court: Dr. Moore.

"Mr. Northup: No, he would not have testified he died of hemorrhage.

"The Court: I understand that the offer of proof was to that effect.

"Mr. Northup: No, that he died from broken bones and physical shock.

"The Court: Which produced the hemorrhage. Is that right?

"Mr. Adler [attorney for plaintiff]: Yes.

"Mr. Northup: That would be Dr. Goodman's testimony also.

"The Court: In other words, there is no evidence of his having bled a particle, and the evidence is conclusive there was not a mark on his body. It is pure argument, and it is behind and beyond the question entirely as to whether or not there would be bruises on his body if he were living and would not be bruises on his body if he were crushed, if he were dead, because circulation had ceased. If he had a heart attack before he was crushed it is beside the point. Even if they had been able to prove what appears to have been impossible, viz., that he died as a result of external violence and not of heart disease, then their measure of damages would have been the next thing for us to consider.

"What is the measure of damages in this case? The measure of damages is what she was deprived of, what loss she suffered by virtue of the withholding of this information. Under the law, if they had the right at common law to sue, there would be a limit of $10,000 for the death. However, this matter came under the Workmen's Compensation Law and she was entitled to recover only what the Workmen's Compensation Law allows for that kind of a death.

"The evidence is conclusive here, gentlemen of the jury, that after his death, after his burial, and after the autopsy she went before the Industrial Commission and she received and accepted a sum which the law allowed her, and she accepted it in full, so even if they could have proven a wrongful death and the withholding of information it is my understanding of the law there could be no measure of damages because she did receive and accept the amount which the law would have given her.

"That is the reason for my ruling. Have the jury signed the verdict?"

Plaintiff strenuously contends that she made out a *prima facie* case against all of the defendants and that the trial court committed reversible error in directing a verdict for defendants; that the statement to the jury conclusively shows that the trial court passed upon the weight of the evidence and misconstrued the law applicable to the motion.

" ' "A motion to instruct the jury to find for the defendant is in the nature of a demurrer to the evidence, and the rule is that the evidence so demurred to, in its aspect most favorable to the plaintiff, together with all reasonable inferences arising therefrom, must be taken most strongly in favor of the plaintiff. The evidence is not weighed, and all contradictory evidence or explanatory circumstances must be rejected. The question presented on such motion is whether there is any evidence fairly tending to prove the plaintiff's declaration. In reviewing the action of the court of which complaint is made we do not weigh the evidence,—we can look only at that which is favorable to appellant [plaintiff]. *Yess v. Yess,* 255 Ill. 414; *McCune v. Reynolds,* 288 id. 188; *Lloyd v. Rush,* 273 id. 489.'' (*Hunter v. Troup,* 315 Ill. 293, 296–7.)' (*Mahan v. Richardson,* 284 Ill. App. 493, 495.)'' (*Thomason v. Chicago Motor Coach Co.,* 292 Ill. App. 104, 110.)

That the trial court, in passing upon the motion, weighed the evidence is clear, and his conclusion that plaintiff had not proven that her husband died "from anything but heart disease" cannot be justified under the evidence. He states: "Of course, they have not proven that he did not die from heart disease. . . . It is my judgment, *which is the missing proof,* that Mr. Wolever did not die from anything but heart disease . . . ." Upon the oral argument in this court and in a supplemental brief filed by defendants, they concede that plaintiff introduced sufficient evidence to make out a *prima facie* case that the death of Wolever resulted from accidental injuries sustained in the course of his employment. They also now concede that "upon cutting open the body on the post-mortem, there was disclosed a broken back and many internal injuries." Aside from certain evidence that tends to prove an accident and the manner in which it occurred, it appears, when Wolever's body was exhumed two weeks after the accident, a post-mortem examination made by the coroner's physician disclosed a number of fractured ribs, a fracture of the back bone, fractured pelvic bones, a number of lacerations on the liver, considerable laceration of the intercostal muscles on the right side, and hemorrhage; also "a sort of greenish yellow discoloration of the left upper chest." After the post-mortem a claim for compensation was filed by plaintiff under the Workmen's Compensation Act, for loss of support, and she was awarded the sum of $3,250, which Maryland Casualty Company, defendant, paid. Had Wolever died of heart disease, plaintiff would not have been entitled to the award, which was necessarily based upon proof that Wolever died as the result of an accident that occurred while he was in the employ of Curtiss Candy Company. Defendants are here contending that that award bars the instant claim for damages.

Plaintiff's contention that the trial court, in the statement to the jury, misconstrued the law applicable to the motion, is also a meritorious one.

Defendants contend that in an action for fraud and deceit the evidence by which the essential elements of the action are established must constitute proof so clear and convincing in its nature as to leave the mind well satisfied that each and all of these elements of fraud have been established, and that the trial court in passing upon the motion in question had the right to consider plaintiff's evidence in the light of that rule of law; and that the trial court was of the opinion that plaintiff's proof was not clear and convincing in its nature and did not leave his mind well satisfied that each and all of the elements of fraud had been established, and, therefore, he had the right to direct the verdict in question. Defendants cite, in support of this contention, *Malewski v. Mackiewich,* 282 Ill. App. 593. In that case plaintiffs brought an action for alleged fraud and deceit in the sale of a note secured by a trust deed, and upon a trial by jury, at the close of all the evidence, defendant made a motion for an instructed verdict in his favor, and the court reserved its decision on the motion and submitted the cause to the jury, which returned a verdict for plaintiff. Defendant then made a motion for a judgment in his favor notwithstanding the verdict, and the court granted the motion and entered judgment in favor of defendant. The first division of this court held (pp. 603–4) that the uncontradicted affirmative evidence showed that plaintiff did not rely upon the alleged false representation; that therefore there was no evidence tending to sustain an essential element of the cause, "and for that reason, *as well as because the quality of the evidence considered as a whole was insufficient to justify a reasonable verdict for plaintiffs,* the trial court rightfully

entered judgment in favor of defendant, notwithstanding the verdict of the jury.'' (Italics ours.) The language we have italicized was not necessary to a determination of the case, and it may be considered as obiter. In any event, the trial court in the *Malewski* case had no right to weigh the evidence in passing upon the motion for a judgment in defendant's favor notwithstanding the verdict.

''The court in passing upon the motion [one for judgment notwithstanding the verdict] must decide whether, as a matter of law, the party requesting the directed verdict is entitled thereto. This provision of the Civil Practice Act and rule 175 of the municipal court must be taken in connection with rule 22 of the rules of practice of the Supreme Court which provides: 'The power of the court to enter judgment notwithstanding the verdict may be exercised in all cases where, under the evidence in the case, it would have been the duty of the court to direct a verdict without submitting the case to the jury.' The statute and rules require the court to be governed by the same rules in passing upon a motion for a judgment notwithstanding the verdict as govern it in passing upon a motion for a directed verdict. The trial court in passing upon this motion has no more authority to weigh and determine controverted questions of fact under the Civil Practice Act than under the Practice Act of 1907. *Illinois Tuberculosis Ass'n v. Springfield Marine Bank,* 282 Ill. App. 14; *Capelle v. Chicago & N. W. Ry. Co.,* 280 Ill. App. 471. If it were permissible for a trial judge on a motion *non obstante veredicto* to weigh the evidence and enter a judgment according to his opinion as to wherein lies the greater weight of the evidence, then the right to a trial by a jury would be done away with and the judgment of the court substituted therefor. It is only where there is no evidence as a matter of law to sustain either a plaintiff's or a defendant's claim that a judgment may be rendered notwithstand-

ing the verdict. In the instant case the evidence was conflicting and the court should not have substituted its judgment as to the weight of the evidence in place of the verdict of the jury." (*McNeill v. Harrison & Sons, Inc.,* 286 Ill. App. 120, 128–9.)

*Illinois Tuberculosis Ass'n v. Springfield Marine Bank, supra,* was decided by the third district of this court; *Capelle v. Chicago & N. W. Ry. Co., supra,* by the second district. We are entirely in accord with what is said in *McNeill v. Harrison & Sons, Inc., supra.* Had a verdict been returned for plaintiff in the instant case, the trial court, in passing upon a motion for a new trial, would have had the right to apply the general rule of law as to the character of the proof that is required in an action for fraud and deceit. As stated in *Capelle v. Chicago & N. W. Ry. Co., supra* (p. 480): "If the court is dissatisfied with the verdict under the evidence, he should grant a new trial."

Plaintiff's contention that she made out a *prima facie* case under the complaint against all of the defendants is disputed by defendants. We are satisfied that plaintiff's contention is a meritorious one. It would unduly lengthen this opinion to state the facts and circumstances that bear upon the instant contention. Moreover, as this cause may be tried again, we deem it advisable to refrain from commenting upon the evidence.

Defendants contend that to warrant a recovery in this case plaintiff would have to prove "that what the defendants did they did in concert and by agreement. There is absolutely no evidence in this record of any such agreement or conspiracy." Even in a criminal case it is not necessary to prove that the alleged conspirators came together and actually agreed, in terms, to a common design and to pursue it by common means, and in civil or criminal cases a conspiracy may be proved by facts and circumstances. Moreover, while the second count charges a conspiracy to defraud by

joint tort feasors, the first count alleges fraud and deceit by individual tort feasors.

Defendants argue that "the facts are as consistent with an entirely innocent mistake or a case of poor judgment merely, as the contention of fraud and deceit." In passing upon a motion to direct a verdict the rule is that the evidence, "in its aspect most favorable to the plaintiff, together with all reasonable inferences arising therefrom, must be taken most strongly in favor of the plaintiff." (*Thomason v. Chicago Motor Coach Co., supra.*) Plaintiff made out a *prima facie* case, and it was for the jury to determine the facts from the evidence. Much of the argument of defendants, while irrelevant here, would be relevant on a motion for a new trial or upon an appeal from a judgment in favor of plaintiff.

Plaintiff strenuously contends that the trial court erred in holding that even if she proved her allegations as to fraud and deceit it would avail her nothing, because she was entitled to recover only what the Workmen's Compensation Law allowed her. Defendants contend that the ruling was correct, and that the court properly rejected evidence as to physical injuries and financial losses claimed to have been sustained by reason of the fraud and deceit. The trial court's ruling was, of course, erroneous. This is a common law action for fraud and deceit, and plaintiff could not recover under the compensation act for the damages she alleges she sustained *by reason of the fraud and deceit.* Should plaintiff, upon a new trial, be able to sustain the alleged charge of fraud and deceit against defendants, there are certain damages alleged in her complaint which she would be entitled to recover if the proof showed that she sustained such damages. One of her claims is that she has a right to recover damages for mental worry, strain and nervousness, and bodily injuries she

sustained as a result of the fraud and deceit, and defendants vigorously argue that no such damages could be allowed even if plaintiff proved her allegations as to fraud and deceit. That it would be difficult under the particular facts of this case for plaintiff to prove that such damages were proximately caused solely by the fraud and deceit may well be conceded. However, under the present state of the record we are not called upon to express an opinion as to whether or not plaintiff can, in another trial, sustain this particular claim.

The contention of defendants that the decision in *Ivanhoe v. Buda Co.*, 251 Ill. App. 192, precludes plaintiff from recovering any damages in the instant case, is without merit. In that case the employee sued for damages arising out of alleged fraud perpetrated upon him by the Buda Company, which induced him to refrain from filing a claim before the Industrial Commission for accidental injuries sustained during the course of his employment. That case had previously been before the first division of this court (247 Ill. App. 336), and one phase of the controversy had been before the Supreme Court (306 Ill. 188). The plaintiff there claimed that because of the fraud and deceit of the defendant in representing to him that his claim had been filed in apt time he failed to file his claim within the time required by the statute and that as a result he lost his right of action under the Workmen's Compensation Act. The only damages he claimed and in support of which he offered evidence, were such as he might have recovered under the said act, and from the two opinions of the Appellate Court it is clear that he made no attempt to show any other damages sustained because of the fraud and deceit. Under that state of the pleadings and the proof, the Appellate Court (251 Ill. App. 192, *supra*) held (p. 196) that the jury should be instructed that the basis of its verdict should be the

award which plaintiff would be entitled to under the Workmen's Compensation Act. The instant case presents a different situation.

We do not deem it necessary to specifically pass upon several just complaints of plaintiff that the trial court erred in excluding certain evidence offered by her, as we are satisfied that the errors are not likely to occur upon a new trial.

After a careful consideration of the instant appeal we conclude that plaintiff's case should have been submitted to the jury.

The judgment of the circuit court of Cook county is reversed, and the cause is remanded for a new trial.

*Judgment reversed, and cause remanded for a new trial.*

Friend, P. J., and Sullivan, J., concur.