Nora Porter, Plaintiff in Error, v. Continental Casualty Company, Defendant in Error.

Gen. No. 37,317.

Opinion filed November 27, 1934. Rehearing denied December 10, 1934.

HENRY C. FERGUSON, for plaintiff in error.

GEORGE C. BLISS and ABRAHAM LEPINE, for defendant in error.

MR. JUSTICE SCANLAN delivered the opinion of the court.

An assumpsit action against defendant by plaintiff, as beneficiary under an accident insurance policy issued by defendant upon the life of Curtis Porter, plaintiff's deceased husband. The case was tried by the court, upon a stipulation of facts, and there was a finding and judgment against plaintiff.

Defendant's affidavit of merits alleges, *inter alia,* "that Curtis Porter came to his death as a result of an intentional act of some other person, and not for the purpose of burglary or robbery and not while said Curtis Porter was engaged in the proper performance of the duties of his occupation," and that, therefore, under section (clause) (3) of Part XI of the policy, defendant, insurer, is not liable. Defendant concedes that the trial court made its finding upon the theory that said clause relieved the insurer from liability, and it further concedes that the sole question in this court is, Was the trial court right in so holding?

The parties entered into the following stipulation of facts and agreement:

"1. That Curtis Porter was issued a policy of insurance, attached hereto and marked plaintiff's Exhibit 1, wherein the defendant promised to pay the beneficiary, the plaintiff herein, (who is the wife of said insured) the sum of $2,000, for loss of life, as provided in said policy of insurance; and that the said policy was in full force and effect during the lifetime and at the time of the death of the said Curtis Porter.

"2. That on February 3, 1931, Curtis Porter, the insured was intentionally stabbed and killed by one

Lottie Heath, not in a mutual affray, but said assault and killing was wanton, causeless, unprovoked, unexpected and unforeseen by him; that the assault by stabbing of said insured by the said Lottie Heath was not committed for the purpose of burglary or robbery; that said assault was not incurred by the insured while engaged in the proper performance of the duties of his occupation and provoked solely thereby; that if plaintiff is entitled to recover, the judgment shall be for $2,000, plus interest at five per cent from May 21, 1931.''

At the conclusion of the evidence plaintiff moved the court to find for plaintiff in the sum of $2,000, plus interest upon $2,000 at five per cent from May 21, 1931, but the court denied said motion. Thereupon defendant moved the court to hold ''as a matter of law, that upon the facts set forth in the stipulation of facts filed in this case, the policy sued upon does not cover the loss of the life of the insured.'' The court sustained this motion.

The following is plaintiff's theory of the case:

''The plaintiff contends that the intentional stabbing and killing of the insured was by accidental means within the terms of the policy; that the words 'Loss of Life' and 'Death' having been used in the policy several times defining and specifying loss of life and specific losses and regarding the giving of notice and the payment of losses and the payment of the death benefit under the policy, the clause exempting 'Loss from injuries resulting from the intentional acts of others,' unqualified by the words 'or killed' or 'of life' or 'fatal or otherwise' respectively, regarding the losses and injuries excepted, did not relieve the insurer from liability for the intentional stabbing and killing of the insured; that the exception clause violated clause 6 of Section 2 of Chapter 73 of Cahill's Illinois Revised Statutes of 1931 regulating the form of accident and casualty insurance, which

provides that exceptions of the policy shall be pointed with the same prominence as the benefits to which they apply, and that any exception reducing any promised indemnity shall be pointed in bold faced type with greater prominence than any other portion of the policy; that the Court erred in construing the policy strictly against the plaintiff and erred in holding as a matter of law that under the stipulation of facts with plaintiff's exhibit 1 attached the policy did not cover the loss of life of the insured; and that the exemption clause did not exempt the defendant from liability for the accidental death of the insured."

Plaintiff has cited numerous authorities in support of her contention that "death resulting from the malicious and intentional stabbing of the insured by another, is by external, violent and accidental means, within the meaning of a life and accident insurance policy, it being unforeseen and unexpected by the insured, and he having had no agency in bringing the assault upon himself," but it is entirely unnecessary to refer to the cases cited, as defendant, in its brief, makes the following admission: "Counsel cites many cases to sustain his contention that the intentional killing of the assured was an accident within the meaning of the policy. Of course it is, and we have never contended otherwise, but we do contend that such loss is not covered by the contract of insurance."

At the top of the front page of the policy, in large, heavy letters, appears the following:

"This policy provides indemnity for loss of life, limb, limbs, sight or time caused by accidental injury and for loss of time caused by sickness—all to the extent herein provided."

On the same page appears the general insurance clause, which reads as follows:

"The Continental Casualty Company . . . promises to pay to him or to his beneficiary Nora Porter his

wife indemnities as here provided for loss resulting from accident or sickness.

"The insurance given by this policy is against loss of life (suicide or self-destruction while either sane or insane not included), limb, limbs, sight or time resulting from a personal bodily injury which is effected solely and independently of all other causes by the happening of an external, violent and purely accidental event, and against loss of time resulting solely from bodily sickness which is contracted and begins not less than fifteen days after the date of this policy, all in the manner and to the extent hereinafter provided. The words 'injury' and 'sickness' wherever hereinafter used mean respectively injury or sickness such as is here described."

Upon the same page of the policy appears the following:

"Part I. Specific Indemnity

"A. If within one hundred and twenty days from the date of the accident death shall result to the Insured solely from such injury as is before described the Company will pay:

"For Loss of Life........Said Principal Sum
"And in addition all premium previously paid on this policy.

"B. If within one hundred and twenty days from the date of the accident any one of the following losses shall result to the Insured solely from injury such as is before described and if further the death of the Insured does not occur within said one hundred and twenty days, the Company will pay:

"For Loss of the Sight
 of Both Eyes......Double Said Principal Sum
"For Loss of Both
 Hands ...........Double Said Principal Sum
"For Loss of Both
 Feet .............Double Said Principal Sum

"For Loss of One Hand and
One Foot ..........Double Said Principal Sum
"For Loss of One Foot and
Sight of One Eye..Double Said Principal Sum
"For Loss of One Hand and
Sight of One Eye...Double Said Principal Sum
"For Loss of Either Hand....Said Principal Sum
"For Loss of Either Foot.....Said Principal Sum
"For Loss of the Sight of
Either Eye ..............Said Principal Sum
"For Loss of Thumb and Index Finger
of Either Hand...One-half said Principal Sum
"If the Insured, during the entire period intervening between the happening of the accidental event and the occurrence of any one of the above losses within said limit of time, shall be wholly and continuously disabled by the injury from performing each and every duty pertaining to his occupation, then the Company will pay said *Monthly Accident Indemnity*. for such period *in addition* to the above indemnity."
At the bottom of the second page of the policy appears the following:

"Part XI.    Miscellaneous Provisions

"This policy is issued in consideration of the statements and agreements contained in the application for it and the payment of premium as therein provided. A copy of such application is hereto attached or hereon endorsed and is hereby made a part of this contract. No provision of the charter or by-laws of the Company not included herein shall avoid the policy or be used in evidence in any legal proceeding thereunder.

"This policy does not cover any loss (1) if the injury or sickness causing it is received or contracted outside of Canada, Mexico or the United States not including Alaska, Hawaii, the Philippines or the

Panama Canal Zone; or (2) if the injury or sickness causing it is received while the Insured is in military or naval service during time of war, or while engaged in aeronautics or while under the influence of any intoxicant; (3) if the injury causing it results from the intentional act of the Insured or of any other person excepting, however, assaults committed upon the Insured for the sole purpose of burglary or robbery and also excepting assaults incurred by the Insured while engaged in the proper performance of the duties of his occupation and provoked solely thereby; (4) resulting from disease or sickness of or injury to the generative organs if the insured is a woman.

''The occurrence of any loss for which indemnity is payable under the terms of Part I shall at once terminate the insurance effected by this policy and not more than one of the indemnities provided in that Part will be paid under any circumstances. Disability due partly to accidental injury and partly to disease or bodily infirmity shall be classed as sickness and covered only under Part VI hereof, the original or exciting cause thereof notwithstanding. Compliance on the part of the Insured and beneficiary with all the provisions of this policy is a condition precedent to recovery hereunder.

''No assignment of this policy or of any claim arising thereunder, and no waiver or change of any of its provisions, definitions or limits shall be valid unless approved in writing by the President or Secretary of the Company and such approval endorsed hereon. The Insured reserves the right to change the beneficiary named herein and may. at any time release the Company from all liability then existing or which may thereafter accrue to the beneficiary.

''This policy except Part VI takes effect at twelve o'clock noon of the date hereof, standard time at Insured's residence and Part VI takes effect fifteen days

thereafter if all premium due meanwhile has been paid as agreed. The whole policy continues in force as long as the premium shall be paid as agreed unless it be sooner terminated in accordance with its terms."

Clause (3) of Part XI is the provision upon which defendant relies to sustain the judgment of the trial court.

Plaintiff contends that Part XI violates clause (6) of section 2 of An Act concerning and to regulate policies issued by companies, corporations, associations, societies or other insurers, doing accident and casualty insurance business, Cahill's Ill. Rev. St., 1933, ch. 73, ¶ 468, which, in so far as it pertains to the instant contention, is as follows:

"Policy—What to be set forth—Size of type.] Sec. 2. No such policy shall be so issued or delivered . . . (6) unless the exceptions of the policy be pointed with the same prominence as the benefits to which they apply."

The plain purpose of this section is to compel insurance companies to fairly apprise the insured of all conditions in a policy that limit the beneficial provisions of the policy. It seems plain to us that clause (3) is inserted under an inappropriate and misleading heading, which would not fairly apprise the insured that Part XI contained, *inter alia,* an important provision like clause (3). In *Ziolkowski v. Continental Casualty Co.,* 270 Ill. App. 286, the instant defendant was sued under an accident insurance policy which also contained clause (3), but under the following prominent heading (see p. 288 of our opinion): "PART V. NOT COVERED. This policy does not cover any loss . . . ." The wording of this heading was a fair notice to the insured that the policy did not cover certain losses. Why it was not used in the instant policy is not disclosed by the record. We agree with plaintiff that clause (3) was not a compliance with clause (6)

of section 2, par. 468, ch. 73, of the statutes, and was, therefore, not binding upon the insured.

Plaintiff further contends that even if clause (3) were not a violation of clause (6), nevertheless, it must be held, under the phraseology of the clause and the rules of law that govern its interpretation, that it excludes indemnifiable losses payable to the insured which might result from the intentional acts of himself or any other person but does not exclude liability for the intentional killing of the insured by another; that if the defendant intended to protect itself against the liability for the intentional killing of the insured by another, it could have readily so provided, in clause (3), by apt words that would have apprised the insured that the policy did not cover any loss resulting from a fatal injury intentionally inflicted upon him by another person, and plaintiff further argues that the word "injury," as used in the clause, must be held to mean a bodily harm that does not result in death. Webster's New International Dictionary defines "injure" as follows: "To do harm to; to hurt; damage; impair; to hurt or wound, as the person; to impair the soundness of, as health"; and defines the word "injury" as "Damage or hurt done to or suffered by a person or thing; detriment to, or violation of, person, character, feelings, rights, property, or interests, or the value of a thing." Funk and Wagnalls' New Standard Dictionary of the English Language defines "injury" as follows: "Whatever reduces the utility or mars the integrity of the body." In *Interstate Business Men's Accident Ass'n v. Dunn,* 178 Ky. 193, the policy insured against certain accidental injuries and provided that if the insured sustained any of the said injuries and death resulted the company would pay the beneficiary $5,000. It further provided that the insurance "shall not extend to or cover any loss due to . . . the act of any person done to injure the

insured.'' The insured was intentionally shot and killed and the company denied liability under the exemption provision. The Kentucky court held that ''injure'' meant ''to do harm to; to hurt; to damage, as to hurt or wound,'' and that such word is never used to describe fatal injuries but is customarily confined to non-fatal injuries; that the exemption clause did not give the word ''injuries'' a broader meaning than it has in common usage and that if the company had desired to give it a broader meaning it might very readily have provided that ''loss of life'' should be included in the word ''injuries.'' In *American Accident Co. of Louisville v. Carson,* 99 Ky. 441, the company issued a policy against injuries or death resulting from violent, accidental means containing an exemption clause which provided: ''This insurance does not cover . . . nor extend to or cover intentional injuries inflicted by the insured or any other person . . . .'' The insured was intentionally shot and killed by another. It was held that it was well settled that such a clause refers to only ''non-fatal injuries not inflicted by the insured or any other person.'' The Kentucky court calls attention to the fact that many accident policies, in their exemption clauses, use a form that plainly apprises the insured that when intentional injuries or death are inflicted upon the insured by himself or any other person the company is protected against loss. (See also *Davis v. Massachusetts Protective Ass'n,* 223 Ky. 626; *Woods v. Provident Life & Accident Ins. Co. of Chattanooga,* 240 Ky. 398; *Hessler v. Federal Casualty Co.,* 190 Ind. 68, 129 N. E. 325; *Business Men's Indemnity Ass'n v. Washburn,* 94 Ind. App. 395, 157 N. E. 104; *Lincoln Health & Accident Ins. Co. v. Buckner,* 117 Okla. 35, 245 Pac. 582; *International Travelers' Ass'n v. Barnes* (Tex. Civ. App.), 43 S. W. (2d) 135; *Gavula v. United States Health & Accident Ins. Co.,* 15 Penn.

Dist. Rep. 432.) If we deemed it necessary other cases to the same effect might be cited.

Plaintiff also argues, and with some force, that certain other provisions of the policy sustain her interpretation of clause (3), but we do not deem it necessary to specially refer to the same.

Defendant has cited *Ziolkowski v. Continental Casualty Co., supra,* in support of its interpretation of section (3). The *Ziolkowski* case was before this branch of the court and our decision turned upon the question as to whether, or not, under the undisputed evidence the act of the Mexican was intentional within the meaning and intent of Part V of the policy, and we held that it was intentional. The contention of plaintiff in this case that clause (3) did not exclude liability for the intentional killing of the insured by another, was not raised in the *Ziolkowski* case.

The instant contract of insurance was drawn by defendant, and even if the language of clause (3) were reasonably susceptible of two interpretations, nevertheless, under the settled rule of law, that interpretation must be adopted which will not defeat plaintiff's claim.

After a very careful consideration of the questions involved we have reached the conclusion that both of the contentions of plaintiff in respect to clause (3) are sound, and if we are right in our conclusion it follows that the trial court erred in refusing to find for plaintiff and in finding for defendant.

Under the stipulation of facts it was agreed that if plaintiff is entitled to recover ''the judgment shall be for $2,000, plus interest at five per cent from May 21, 1931.'' There is, therefore, due plaintiff, at the present time, in principal and interest, the sum of $2,350, and judgment will be entered here for that amount.

The judgment of the municipal court of Chicago will be reversed and judgment will be entered here in favor of plaintiff and against defendant in the sum of $2,350.

*Reversed and judgment here in favor of plaintiff and against defendant in the sum of $2,350.*

GRIDLEY, P. J., and SULLIVAN, J., concur.