Boyda Dairy Company, Appellant, v. Continental Casualty Company, Appellee.

Gen. No. 40,375.

470

Opinion filed April 10, 1939. Rehearing denied April 24, 1939.

TOUDOR & WEINROB, of Chicago, for appellant; THADDEUS C. TOUDOR and ALEC E. WEINROB, of counsel.

GEORGE C. BLISS, of Chicago, for appellee.

MR. JUSTICE MATCHETT delivered the opinion of the court.

In an action on an insurance policy by which defendant agreed to indemnify plaintiff for losses sustained by robbery, according to the terms of the policy, upon trial by jury, defendant at the close of all the evidence made a motion for an instruction in its favor, which was denied. The cause was submitted to the jury which returned a verdict for plaintiff in the sum of $3,500, whereupon defendant moved for a new trial and for judgment in its favor *non obstante veredicto*. The court set aside the verdict, then granted defendant's motion for judgment notwithstanding. Plaintiff appeals.

Plaintiff argues that the judgment is contrary to the evidence and the law. Plaintiff is a dairy company; its place of business is 4218–26 West Chicago avenue in Chicago. October 10, 1932, defendant insurance company issued its policy to plaintiff in consideration of the premium, agreeing to indemnify plaintiff to the amount of $3,500 against a robbery in the interior department of the premises where the business of plaintiff was transacted. A clause in the policy provided that defendant should not be liable unless plaintiff had "taken all reasonable precaution to safeguard the property against loss by robbery." By another clause it was provided that a policeman

should be on duty during the daytime "when exposure exceeds Five Hundred Dollars"; that guards with no other duties would be on duty on the premises when regularly open for business; that a push-button hold-up alarm system connected with a central station or with a gong outside or inside the premises would be maintained in proper working order at all times when the premises were regularly open for business.

The suit was begun June 22, 1933, before the Civil Practice Act went into effect. The Act of 1907 was applicable. (Ill. Rev. Stat. 1937, ch. 110, p. 2381.) Defendant filed the general issue with special pleas, to which plaintiff filed replications. The pleas negatived the performance by plaintiff of promises which it was said plaintiff was obligated to perform.

Plaintiff contends there was evidence from which the jury could find in its favor on each issue; that the judgment should be reversed and judgment in plaintiff's favor entered by this court. Defendant contends there was no evidence which justified a verdict for plaintiff and argues cross error in that the court denied defendant's motion to enter judgment in its favor for failure of plaintiff to file a copy of the policy on which the action was based with its declaration, as required by section 32 of the Practice Act of 1907. Defendant cites *Staley v. Illinois Threshermen's Mut. Ins. Co.,* 246 Ill. App. 279. The original declaration was filed June 22, 1933. The Practice Act of 1907 was then applicable. This court has not approved the *Staley* case for reasons stated in *Party Cab Co. for use of Hill v. Central Mut. Ins. Co.,* 270 Ill. App. 489, where section 32 was construed.

The law applicable to a motion for judgment *non obstante veredicto* as it now exists is stated in section 68 (3) of the Civil Practice Act, Ill. Rev. Stat. 1937, ch. 110, par. 192, p. 2404 [Jones Ill. Stats. Ann. 104.068], and the section has been construed in a num-

ber of cases. (*McNeill v. Harrison & Sons, Inc.*, 286 Ill. App. 120; *Wolever v. Curtis Candy Co.*, 293 Ill. App. 586; *Farmer v. Alton Bldg. & Loan Ass'n*, 294 Ill. App. 206.) Under section 68 (3) of the Civil Practice Act in passing on a motion for judgment notwithstanding the verdict, the same rule is applied as formerly and now in passing on a motion for a directed verdict. If there is any evidence from which the jury can reasonably find in favor of plaintiff on the issues of fact, it is error to direct the jury to return a verdict for defendant or for the court on motion of defendant to enter judgment in favor of defendant notwithstanding the verdict of the jury.

The material facts which the evidence tends to establish are that on November 23, 1932, while the policy was in force, at about 10:10 in the morning, Mr. Wintermute, a messenger for Brinks Express Company, drove up to the place of business of plaintiff with an armed guard and delivered to plaintiff a sealed bag containing $5,160.99; this bag with the money in it was left with Joseph Sallas, who was then in the office acting as plaintiff's cashier. Sallas took the bag to Theodore Jasinski, who was plaintiff's office manager; he took the bag and locked it in a drawer of his desk, located in the main office. Jasinski then left for another room for the purpose of preparing the pay roll. At this time five armed robbers entered plaintiff's main office. Two of them held up Sallas and forced him to surrender the bag with the money in it. In the meantime confederates of these robbers entered the driver's room and compelled other employees of plaintiff to lie down on the floor; they struck Stanley Boyda, president of plaintiff, on the head with a gun severely injuring him; then made their escape.

The plant of the Boyda Dairy Company was opposite a railroad yard in a sparsely populated dis-

trict. The company occupied space which fronted 210 feet on Chicago avenue, which runs east and west, and 170 feet on Tripp avenue, which runs north and south. Plaintiff employed about 120 persons. The offices were located on the second floor and about eight or nine of the employees worked in these offices. The front office was L-shaped, about 40 feet long and 25 feet wide. It contained a vault about 10 by 8 feet in dimensions. The drivers' room was on the same floor and two doors led from it, one of which was always locked. The other door adjoined the cashier's cage which was operated by an electric lock and push button located in the cashier's cage. No one could gain admittance to the main office unless the cashier pressed the button. Joseph Sallas was in the cage on the day the robbery occurred. There was evidence tending to show that the push button was working. Sallas was about 40 years of age and had worked for plaintiff several years. The cashier's cage was a room about 10 feet long and about 7 feet wide with a bronze grill with bars in front. In the cage was a Brinks Express Company deposit safe with a series of cash drawers, a telephone and a desk. A .38 caliber revolver was kept in the cage and was there when the robbery occurred. The drivers' room was about 40 feet square. It contained 6 large desks which were used by the drivers in making up their reports. Adjoining the drivers' room was a route foreman's room which was fixed up with a window and grill and bars and occupied by the route foreman, John Chmiel, who kept a revolver in his desk. There was a watch clock system throughout the premises which had about 10 stations. There was a day watchman and a night watchman who made their rounds and pushed the clock day and night. The punch caused the clock to register on a dial.

Bruno Boyda was secretary and general supervisor in November, 1932. He supervised the office, the sales, and directed matters throughout the plant. Horses and wagons and trucks were used and there was a garage and a stable on the premises. Directly beneath the main office was a pasteurizing room; back of that the bottle and wash room and various processing rooms. The pasteurizing room had an air shaft leading to the roof on top of which was a skylight. There was a gong connected with the skylight. An extension had been put in leading to a driveway; there was a gong there under the canopy outside the premises in the driveway on the east side of the plant, where the drivers congregated and where they loaded their milk. Plaintiff employed about 60 drivers. Every three or four weeks at regular intervals the signal or push button was tried out. Bruno Boyda testifies that it was working on November 23rd, before the robbery; that he had never received any notice that it didn't work until after the robbery; that the watchman and the guards were armed with revolvers and had no other duties to perform. John Kot was the day watchman on the outside in the yard; in the office Leslie Janco was watchman; both were armed; Bruno Boyda also carried a revolver. Theodore Jasinski, office manager, supervised the pay roll.

The building was built in 1930. Defendant had arrangements by which at certain times the city of Chicago furnished policemen to guard the plant; these policemen came from the Austin station at 5300 West Chicago avenue. The night watchman was Theodore Kaczor, who was armed. A policeman came every morning from the Austin station and this had been the custom for many years; policemen from this station were accustomed to come over between four and six o'clock p. m., for the purpose of protecting collections and pay rolls. The reason for this was that

the drivers were coming in with the money at that time and then also plaintiff paid out money. There was a standing order at the Austin police station that there should be furnished to plaintiff from four to six o'clock p. m. every day (except Sundays, holidays and election days) a police guard. The police officer usually remained in the inner corridor in which the cashier's cage was located.

These facts appear from the testimony of officers and employees of plaintiff. As against their testimony defendant offered in evidence statements in writing of Jasinski, Stanley Boyda, John Chmiel and Edgar Wintermute, which were to the effect that there was no policemen on the premises at the time of the robbery, and other facts tending to impeach their testimony. The statements were written by Thornton, an adjuster for the insurance company. The officers of the company say the adjuster told them these were to be signed in order that they might get their money. The weight of such testimony is always for the jury.

The policy provided that defendant should not be liable for loss or damage, "unless Assured has taken all reasonable precautions to safeguard the property against loss by robbery." We think on the facts as stated it was a question for the jury to decide whether such precautions were taken and whether this condition had been met. An indorsement was placed on the policy in which it was agreed that in consideration of the reduced premium for which the policy was written, Item B was amended, as to the hours of coverage, to read: "Any hour of the day or night throughout the policy period." Further: "It is also understood and agreed that a policeman will be on duty during the daytime when exposure exceeds Five Hundred and No/100 Dollars ($500.00)."

Defendant says there was no evidence tending to show that a policeman was on duty at the time the rob-

bery occurred. The provision of the policy is, we think, ambiguous, not only as to what kind of policeman was to be in attendance but also as to the time or times when or place or places where he was to be. Ambiguous language is to be construed most strongly against the insurance company. (*Porter v. Continental Casualty Co.*, 277 Ill. App. 492; *Ziolkowski v. Continental Casualty Co.*, 365 Ill. 594; *Midwest Dairy Products Corp. v. Ohio Casualty Co. of Hamilton, O.*, 356 Ill. 389.)

Defendant argues error in the giving of two instructions at plaintiff's request and cites *Molloy v. Chicago Rapid Transit Co.*, 335 Ill. 164, which an examination discloses does not apply.

The burden of proving facts set up in its pleas was in the first instance on the defendant. On no issue raised by the pleadings in this case would the court have been justified either in granting a motion of defendant for an instructed verdict at the close of all the evidence or granting its motion for judgment notwithstanding the verdict after the verdict had been returned.

For the reasons indicated the judgment of the trial court is reversed and judgment entered here on the verdict.

*Reversed and judgment here.*

McSurely, P. J., and O'Connor, J., concur.