196

John Valant, Appellee, v. Metropolitan Life Insurance Company, Appellant.

Gen. No. 40,654.

Opinion filed November 27, 1939. Rehearing denied December 11, 1939.

HOYNE, O'CONNOR & RUBINKAM, of Chicago, for appellant; NATHANIEL RUBINKAM & JAMES C. RICH, of Chicago, of counsel.

GILBERT F. WAGNER and WILLIAM C. GREATMAN, both of Chicago, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff (the assignee of his mother, Marcella Valant, the beneficiary named in a policy issued by defendant April 5, 1933, on the life of Kazimer Valant, the husband of Marcella and father of plaintiff), brought an action to recover the face of the policy, $2,500, with interest. The defense interposed was that the person who signed the application and submitted to a medical examination was not Kazimer Valant, named in the policy—that someone had impersonated him. There was a jury trial and a verdict in favor of defendant. Afterward the court entered judgment, notwithstanding the verdict, in favor of plaintiff for $2,875 and defendant appeals.

The action of the court in entering judgment for plaintiff, notwithstanding the verdict, was bottomed on the proposition that the policy by its terms was incontestable after two years, and that since the policy was dated April 5, 1933, and the named insured died September 6, 1935, the defense interposed was unavailing.

The application, dated March 25, 1933, which is made a part of the policy, shows that the applicant, Kazimer Valant's place of business was 8856 S. Lowe avenue, Chicago; that he had resided at that residence for four years; that he was born in Lithuania, October 25, 1893 and was married. The beneficiary was his wife, Marcella Valant, 38 years old, who lived at the same address. Charles Stone was the representative of the insurance company who took the application. An-

other part of the application shows that the applicant was examined at 8856 S. Lowe avenue by Dr. A. I. Sprague, on March 31, 1933. Four receipts issued by the defendant company are also in evidence. They show that the semiannual premiums were paid October 11, 1933; April 24, 1934; October 12, 1934 and March 25, 1935. Each of these was countersigned by Charles Stone and state that the payments were received from Kazimer Valant, of 8856 S. Lowe avenue. The evidence further shows that Kazimer Valant died September 6, 1935; that at that time he had lived for 10 years at 4180 Archer avenue, Chicago; that November 10, 1916, Charles Walantas made application to defendant insurance company giving his address 2935 W. 39th place, Chicago, and his occupation as a carpenter; that he expected to go back into the grocery business; that Marcella Walantas, his wife, was named beneficiary. A policy on this application was issued January 2, 1917, to Charles Walantas, who then resided at 4039 S. Albany street, Chicago, and that on October 27, 1923, his address was changed to 4180 Archer avenue. There is further evidence that the English translation of ''Kazimer Valant'' is ''Charles Valant'' and that Charles Walantas was the same person as Kazimer Valant named in the policy in suit.

The policy provided it should be incontestable after it had been in force for a period of two years, except for nonpayment of premiums. There is other evidence in the record but since we have reached the conclusion that the case must be tried again, it is unnecessary to refer to it here.

The contention of defendant is that Kazimer Valant, who signed the application and who submitted to the medical examination prior to the issuance of the policy, was in business and lived at 8856 S. Lowe avenue, Chicago, and that the four semiannual premiums were paid by him from that address; while the man who died

(whose son sues as assignee of the beneficiary of the policy) lived and was in business for many years at or near the vicinity of 4180 Archer avenue—in other words the person who signed the application and took the medical examination, was not the man who died and whose representative is seeking to recover here; that this question was submitted to the jury which found in favor of defendant, and that the incontestable clause in the policy does not apply in such a situation. On the other side, it is contended that all the evidence shows defendant had no defense and that the policy is incontestable because it had been issued more than two years before the insured died.

Whether the incontestable clause can be invoked (where the person making the application and submitting to the medical examination impersonates another), so far as we are advised, has never been passed upon by a court of review in this State, and the question is not free from difficulty.

In *Powell v. Mutual Life Ins. Co.,* 313 Ill. 161, it was held that the purpose of the incontestable clause in a life insurance policy is to fix a limited time in which the insurance company must ascertain the truth of the representations made in securing the policy; that such clause does not waive all defenses nor condone fraud, but provides a short statute of limitations in favor of the insured, and within the limited period the insurer must assert its claim either by affirmative action or by defending a suit on the policy. The court there said (pp. 164, 165): "Clauses in life insurance policies known as 'incontestable clauses' are in general use, and in this State (Laws of 1921, p. 482), and in other States are now required by statute. In the earlier development of insurance contracts it not infrequently occurred that after the insured had paid premiums for a large number of years, the beneficiaries under the policy found, after the maturity thereof by the death

of the insured, that they were facing a lawsuit in order to recover the insurance; that in certain answers in the application it was said by the insurer, the insured had made statements which were not true, and the beneficiaries were not entitled to recover on the policy. It is needless to call attention to the fact that this situation gave rise to a widespread suspicion in the minds of the public that an insurance contract was designed largely for the benefit of the company. . . . Such a clause is generally upheld as valid, because it gives to the insurer a reasonable time in which to discover fraud, if there be such, in the securing of the insurance contract.''

In that case there was no question about one party impersonating another. This is also true as to the other cases cited by counsel for plaintiff, on the question of the incontestability of a policy, viz., *Mutual Life Ins. Co. of N. Y. v. Hurni Packing Co.,* 263 U. S. 167; *State Mut. Life Assur. Co. v. Stapp,* 72 Fed. (2d) 142; *Service Life Ins. Co. v. Weinberg,* 81 Fed. (2d) 359.

On the other hand, it has been held that where a policy of insurance has been procured by impersonation of the person named in the policy as the insured, without application made or authorized by the designated insured, no contract is made, and the incontestable clause does not estop the insurance company from denying liability. *Ludwinska v. John Hancock Mut. Life Ins. Co.,* 317 Pa. 577 (178 Atl. 28, 98 A. L. R. 705); *Petaccio v. New York Life Ins. Co.,* 125 Pa. Super. Ct. 15, 189 Atl. 697; *Carter v. Metropolitan Life Ins. Co.,* 275 Mo. 84; *Maslin v. Columbian Life Ins. Co.,* 3 Fed. Supp. 368.

The *Ludwinska* case was an action on a policy of insurance for which Bertha Ludwinska applied representing herself in the application as Victoria Ludwinska. Victoria was confined to an insane asylum at the time. Afterward she died and suit was brought on the

policy. It contained a provision that it should be incontestable after a period of two years, except for nonpayment of premiums. The trial court refused plaintiff's motion for judgment. On appeal to the superior court, the judgment was reversed with directions to enter judgment for the amount of the policy. The case was then taken to the Supreme Court of Pennsylvania, where the judgment of the superior court was reversed. The Supreme Court said that the superior court, in reversing the trial court, accepted as correct the insurance company's contention that fraud, material to the risk, was committed and quoted from the opinion of the superior court the following (pp. 579, 580): "it was defendant's duty, however, to investigate within the two-year period to ascertain if deceit had been practiced. If defendant had moved to protect itself from such imposition within that period, and the facts now alleged had been discovered, the contract would have been declared invalid. The very purpose of an incontestable clause is to give assurance to the insured that after the lapse of the two-year period the validity of the policy will not be attacked, except for the express reasons therein mentioned." After this quotation the Supreme Court continuing said:

"The difficulty we find with this conclusion is that the court did not go back far enough to ascertain whether there was any contract between Victoria and the insurance company that would permit the operation of the incontestable clause. . . .

"In all insurance policies, as in other contracts, there must be some point where the minds of the parties meet in contractual relation. . . . There must be identified parties to the contract or, at least, identified parties to take place in the negotiations leading to the contract. When the parties have been identified and their minds have at least met on the question of whom they are respectively dealing with, then whatever fraud,

misrepresentation, substitution or impersonation may occur in the negotiations leading to the formation of the contract itself, are matters of defense. The contract may be induced by fraud or by active misrepresentation of material facts by one of the parties, but before such fraud or misrepresentation comes into play, there must be a relationship, at least in a tentative form, between two or more identified parties who are negotiating the terms of the contract.

"To secure a policy of insurance there must be some offer or application by one capable of making it. The contract must be made by someone capable of contracting under the insurance law. Without this neither the incontestable clause contained in the policy nor the policy itself has any life. The clause can rise no higher than the policy; the incontestable clause cannot of itself create the contract." The court then said that Victoria was an imbecile without power to do any act at all and "therefore a contractual relation between Victoria and the company never existed." The court then cited authorities from the Federal and State courts and said (p. 581): "In these cases it was held that if the insured never made any application for insurance and the policy was procured by impersonation, no contract existed between the parties which would make the incontestable clause applicable." Citing a case from Alabama and another from Louisiana. The court continued:

"Where one contracts with an individual face to face and intends to contract with the person before him, the contract, if any, is made with that particular person, regardless of what name he may assume for the transaction. . . . 'All that the law looks to find is the identity of the individual and when that is ascertained and clearly established, the act will be binding on him and others.' "

In the *Petaccio* case (189 Atl. 697), the superior court of Pennsylvania held that the incontestable

clause of a life insurance policy did not bar the insurance company from showing that the person who signed the application and submitted to medical examination was not the person in whose name the application was made and the policy issued. In that case suit was brought to recover on a number of insurance policies which, on their face, purported to insure the life of John Petaccio, but through the fraud and deception of the plaintiff, the insurance company had been induced to contract to insure the life of a middle aged man who was not plaintiff's father and whose identity was still unknown. The defense was that the person who died was not the one who signed the application or took the medical examination. The trial court submitted to the jury two questions—whether plaintiff's father contracted with the insurance company and, whether defendant's doctor examined plaintiff's father or some other person impersonating him. It was held that this action of the trial court was proper, the court following the holding in the *Ludwinska* case.

In the *Carter* case (275 Mo. 84), the question turned on the construction of a statute of Missouri. The court quoted with approval from 138 Ky. 359 the following (p. 93): "If a person other than the insured made the application and was examined, there was, of course, no contract between the company and the insured."

The *Maslin* case (3 Fed. Supp. 368), was an action to recover on two life insurance policies which contained clauses rendering them incontestable after one year from issuance, except for nonpayment of premiums. The court said (p. 369): "The first defense is that an imposter posing as Samuel Maslin made the application and took the physical examination for the policies; that the defendant, believing such person to be Samuel Maslin, issued" the policies; that upon discovering the facts, the insurance company tendered back the premiums. The court said the second defense was that Samuel Maslin had been suffering from tuberculosis

for a number of years; that he conspired with one of the insurance company's agents to get insurance on his life. The opinion then continues, "The more important question of this motion is one of law, whether the matters pleaded by the defendant, if true, furnish any reason why it should not pay the policies, in view of the incontestability clause. . . .

"The general rule cannot be questioned that after the passage of the stipulated time the insurance company is precluded from contesting the policy on the ground of false representations by the insured, even those made fraudulently." Citing cases from New York, Tennessee and other jurisdictions, and continuing the court said:

"I think it equally clear, however, that the other defense, the alleged impersonation of Samuel Maslin by another who is said to have made the application and, more important still, to have taken the physical examination, is not barred by the incontestable clause."

Under the authorities above discussed, we are of opinion that under the evidence, the . question of whether there had been an impersonation of Kazimer Valant by another was, in the first instance, a question for the jury, and therefore the court erred in entering judgment for plaintiff, notwithstanding the verdict. On such a motion, the court is not authorized to weigh the evidence. *Boyda Dairy Co. v. Continental Casualty Co.*, 299 Ill. App. 469; *White v. City of Belleville*, 364 Ill. 577; *McNeill v. Harrison & Sons, Inc.*, 286 Ill. App. 120. But if there is any evidence tending to support the defense, the case must go to the jury; and if the court is of opinion that the verdict of the jury is not sustained by a preponderance of the evidence, it is his duty, under the law, to set aside the verdict and award a new trial.

Counsel for defendant say the question for decision, as to whether there had been an impersonation of Valant, was a question of fact for the jury, and since it

returned a verdict in favor of defendant, this court should reverse the judgment and enter judgment on the verdict because the incontestable clause on which plaintiff relies, is not a defense under the facts in the case. Ordinarily, if no procedural errors were urged, this would be proper practice. But in view of the manner in which the case was tried, we think there should be a retrial so that the question might be presented to the jury without confusion. A great deal is said by counsel for defendant that whether the person insured is dead is a question of fact for the jury. The jury were instructed on this theory. We think the question was not in the case. There was no dispute that Kazimer Valant was dead, the only question was whether someone had impersonated him. We think such argument and instruction would only tend to confuse.

We think we ought also to say that the testimony of the two investigators, Gregersen and Schabes, by which it was sought to show that in investigating the matter (the character of which is not discussed) a few months before the death of Kazimer Valant, to the effect that they had talked to Kazimer and his wife, Marcella, was clearly competent. It was direct evidence of what Kazimer and his wife said in relation to the policy and was in no way hearsay. The other question, about the admissibility of documents for the purpose of comparing the signature of Kazimer Valant, can be obviated by counsel following the provision of the statute, pars. 51 and 52, ch. 51, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 107.116, 107.117].

We are also of opinion that defendant did not admit liability by tendering to plaintiff the amount of the premiums received by it.

The judgment of the municipal court of Chicago is reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded with directions.*

MATCHETT, P. J., and McSURELY, J., concur.