Sidney Kanne, Minor, by Abraham S. Kanne, His
Guardian et al., Appellees, v. Metropolitan Life
Insurance Company, Appellant.

Gen. No. 41,692.

McSurely, J., dissenting.

Opinion filed June 9, 1941.

Hoyne, O'Connor & Rubinkam, of Chicago, for appellant; John C. Melaniphy, of Chicago, and Nathaniel Rubinkam, of counsel.

Ben A. Stewart and Miller, Kamenear & Margolis, both of Chicago, for appellees.

Mr. Justice Matchett delivered the opinion of the court.

In a suit to recover double indemnity under a combination life and accident insurance policy, there was trial by jury with verdict for defendant. On plaintiffs' motion judgment notwithstanding was entered in favor of plaintiffs for $2,200.

The procedure was under section 68 (3a) of the Civil Practice Act (Smith-Hurd Ann. Stats., ch. 110, par. 192, p. 681 [Jones Ill. Stats. Ann. 104.068]), and Rule 22 of the Supreme Court (Smith-Hurd Ann. Stats., ch. 110, § 259.22, p. 547 [Jones Ill. Stats. Ann. 105.22]).

For reversal defendant argues error in excluding evidence offered by it and in entering judgment notwithstanding the verdict.

The evidence excluded was a document issued by the Department of Public Health of the State of California, where the insured died August 27, 1938. It is designated "Standard Certificate of Death." Complying with a provision of the policy and by request of defendant this certificate was submitted to defendant by plaintiffs with their proofs of claim. It is argued it should have been admitted as an admission against interest, citing *Ziolkowski v. Continental Casualty Co.*, 263 Ill. App. 31, 40, 41. The certificate is not signed by any physician. It is certified by the coroner of El Dorado county in the State of California. It states the death of the insured, Lillian Garfinkle. It states there was no autopsy, and also states further matters which are purely hearsay. The certificate was not necessary on this trial to establish death of the insured which was admitted. It is unlike the document considered in the *Ziolkowski* case in that the evidence there offered had been submitted to the defendant voluntarily by the plaintiff and without demand or contractual obligation to do so. In *Plano Foundry Co. v. Industrial Commission*, 356 Ill. 186, 193, the Supreme Court held a similar certificate issued by the authorities of this State inadmissible. The opinion says:

"The respondents offered in evidence the certificate of death signed by Dr. Groner. Objection made by the petitioner was sustained and the certificate was not permitted to be put in evidence. Dr. Groner was the coroner and not the attending physician. No autopsy was performed. It is obvious that his certificate was based upon the proceedings of the coroner's inquest. It is said that this certificate was competent evidence under the provisions of the Health act. (Cahill's Stat. 1933, p. 1530; Smith's Stat. 1933, p. 2209.) The doctor's statement as to the cause of death was mere hearsay, based upon an *ex parte* proceeding, in which the coroner's verdict was not competent as evidence in

this proceeding. (*Cameron, Joyce & Co. v. Industrial Com.* 324 Ill. 497; *Spiegel's House Furnishing Co. v. Industrial Com.* 288 id. 422.) We are not deciding that a death certificate made by an attending physician may not under some circumstances be competent evidence in some classes of cases, but in the case at bar it was not error to refuse in evidence the death certificate.''

The controlling question is whether the trial court erred in entering judgment notwithstanding the verdict. The statute provides for this where the court decides ''as a matter of law that a party requesting the directed verdict was entitled thereto.'' The rule provides this power ''may be exercised in all cases where under the evidence in the case it would have been the duty of the court to direct a verdict without submitting the case to the jury.''

Neither statute nor rule has changed the law which requires issues of fact to be submitted to a jury. *Capelle v. Chicago & N. W. Ry. Co.*, 280 Ill. App. 471. It is only where there is, as a matter of law, no evidence to sustain either a plaintiff's or a defendant's claim that a judgment may be ordered notwithstanding the verdict of a jury. *Wolever v. Curtiss Candy Co.*, 293 Ill. App. 586. If there is any evidence reasonably tending to support the defense the case must go to the jury. *Valant v. Metropolitan Life Ins. Co.*, 302 Ill. App. 196. Citations might be multiplied. The question always is whether there is any evidence from which the jury may reasonably in the eye of the law return the verdict.

Here, the supplemental contract attached to the insurance policy provided defendant would pay additional indemnity of $2,000 on proof the insured died as the result, ''directly and independently of all other causes, of bodily injuries sustained solely through external, violent and accidental means,'' with a proviso ''that death shall not have occurred as the result of

self-destruction while sane or insane, or as the result or by the contribution, directly or indirectly, of disease or of bodily or mental infirmity,'' with other provisos not here in question.

The proofs here show the policy issued to Lillian Garfinkle (aunt of the plaintiffs) December 27, 1935, and that she died at Lake Tahoe in the State of California on August 27, 1938; that the circumstances of her death were that on the morning of that day (as on three prior occasions) she entered a metal row boat from a pier, which extended out into Lake Tahoe; that the boat had a ¼ H.P. outboard motor and its speed was about 5 or 6 miles an hour; that it was in good condition. About a half hour later Mr. Smith, who ran a boathouse about a mile northwest of the pier, noticed this boat at a distance of some 700 yards. It was going clockwise making circles of about 50 yards. Smith went to it in his own boat and found it empty with the motor going. He turned the motor off and the boat stopped. He stood up in his own boat, looked through his glasses and saw a black spot or object in the distance, slightly raised out of the water. He went to it and found it to be the body of the insured. The shoulders of the coat she wore stuck up out of the water. The back of the coat between her shoulders was bunched up as if it had air in it. Her feet and legs were hanging down in the water, her hair floating on top of it. (Manifestly the head under the water.) Mr. Smith pulled the body on board his boat and rowed to the pier, where Mr. Stephens helped him take the body to the shore. Artificial respiration was applied. About a quart of water in several streams came out of the mouth. Dr. Hadden arrived, applied the stethoscope, administered adrenalin and continued artificial respiration for about 30 minutes, when he pronounced her dead. There was no evidence of trauma.

On the trial the testimony of Moore, Smith, Stephens and Dr. Hadden was taken by deposition. Dr. Shabat,

testifying for plaintiff, in reply to a hypothetical question said in his opinion the person described could or might have died from drowning. Dr. Paul Schmitt, an expert for defendant, replying to a hypothetical question from defendant's counsel and over objection, said that death could or might have been due to chronic myocarditis.

There was no eye witness as to how the insured got out of the boat and into the water. It has been held in well-considered cases that when a person in good health is found in water, dead, and nothing more is known as to the cause of death, a *prima facie* case of death by accidental drowning is established. In *Sturm v. Employers' Liability Assur. Corp., Ltd.*, 212 Ill. App. 354, this court said:

"Where a man, a few minutes after being seen apparently in good health is found under water, dead, and nothing more is known of the cause of death, the immediate conclusion arrived at is that he was drowned. As the result of common sense and common experience, that opinion is formed by the normal processes of almost instant reason, and it may be said that legally such circumstantial evidence makes out a prima facie case of accidental drowning."

One who against his will comes to his death by drowning suffers death by external, violent and accidental means. *Manufacturers' Accident Indemnity Co. v. Dorgan*, 58 Fed. 945. In many such cases judgments based on findings of the court or verdicts of a jury have been upheld. *Anderson v. Inter-State Business Men's Acc. Ass'n of Des Moines, Iowa*, 354 Ill. 538; *Dietz v. Metropolitan Life Ins. Co.*, 305 Ill. App. 507; *Rosinski v. Metropolitan Life Ins. Co.*, 305 Ill. App. 626 (Abst.); *Landon v. Preferred Acc. Ins. Co. of New York*, 43 App. Div. 487, 60 N. Y. Supp. 188; *Winespear v. Accident Ins. Co.*, 6 Q. B. 42.

The evidence of witnesses Moore, Smith, Stephens and Dr. Hadden was taken by deposition and offered

by plaintiffs. Their testimony established the facts above recited. The only evidence offered by defendant was by the expert, Dr. Schmitt. The question for our decision is whether on the whole evidence and as a matter of law any defense was presented. We are not unmindful that here (contrary to most of the cases above cited) the verdict of the jury is against the plaintiffs. Was there any evidence from which the jury could return the verdict? Manifestly this depends upon what consideration is to be given to the testimony of Dr. Schmitt. An expert witness is not permitted to guess, surmise or conjecture. *Keefe v. Armour & Co.*, 258 Ill. 28, 33, 34; *Lyons v. Chicago City Ry. Co.*, 258 Ill. 75, 80. The opinion of an expert is to be allowed only if it is based on and supported by facts in evidence. *Bowman v. Woodway Stores*, 345 Ill. 110, 116. Mere surmise, guess or conjecture is never regarded as proof of a fact, and a jury will not be allowed to base a verdict thereon. *Wallace v. Yudelson*, 244 Ill. App. 320, 329.

Dr. Schmitt gave the opinion that the death of insured might have resulted from chronic myocarditis. There is not a scintilla of evidence tending to show the insured had ever suffered from any illness or infirmity of this kind. Indeed, the medical examination required by defendant before the insurance policy was issued seems to affirmatively disprove any such theory. Dr. Schmitt said that the question resolved itself, he would say, entirely on whether death occurred before the body entered the water. He said the weight of the body was less than water, and that where an individual is alive when he strikes water it is natural that water will enter both the lungs and through the swallowing process into the stomach, and by displacing the air in the stomach and in the lungs the water increases the specific gravity of the body; or, said he, "The body weighs more than water does per unit of measure, and therefore will sink below the water level, it will go down." There is not a scintilla of evidence in this

record to show whether the body of insured went up or down when it touched the water. There is not a scintilla of evidence which shows whether clothed as the insured was at the time she reached the water, her body would sink or rise, whether alive or dead. In so far, therefore, as Dr. Schmitt attempted to draw any inference in this regard, there was no evidence in the record on which his opinion could be based.

Dr. Schmitt undertook to draw the same inference from the fact there was no proof that the body of the insured, when recovered, disclosed any congestion or hemorrhages in the conjunctiva—that is the covering of the eyeball, which (he said) is invariably present in cases of strangulation. He said "Had drowning occurred, you would find a marked congestion of the conjunctiva and also small hemorrhages under the covering of the eyeball." There is no evidence in the record which shows whether the facts Dr. Schmitt assumed in this respect existed or did not exist. It is apparent even to a layman that there might be differences between cases of strangulation and drowning.

On cross-examination Dr. Schmitt said he would not be able to tell from just looking at a patient whether he had any myocarditis, acute or chronic. In order to diagnose such a case he would resort to its history or symptoms related to him by the patient, or a partial or complete examination, or require an electrocardiographic examination of the heart and an X-ray.

We hold the opinion of defendant's expert was based purely on guess, surmise and conjecture, and the judgment notwithstanding the verdict was therefore justified. It is true we cannot weigh conflicting evidence. However, it is our duty to review the testimony and determine whether there is any evidence to weigh. There is none here for the defense.

*Affirmed.*

MR. PRESIDING JUSTICE O'CONNOR specially concurring: I agree with what is said in the foregoing opinion but I go farther and say there can be no question

under the undisputed evidence but that Lillian Garfinkle came to her death by drowning and no reasonable person would have any trouble reaching this conclusion. The uncontradicted evidence shows that Lillian Garfinkle was about 34 years of age and in good health. There is not one word of evidence that in any way contradicts these facts.

The verdict of the jury in favor of defendant is in comprehensible unless it might be explained on the theory that the jury were confused by the testimony of the two doctors who gave their opinions. But plaintiffs are in no position to complain because their counsel, in his case in chief, called the doctor to give his opinion as to the cause of the insured's death, about which there could be no difference of opinion. While as I think the verdict is incomprehensible except on the theory above stated, I am also of opinion that the defense interposed is equally incomprehensible in view of the fact that no evidence was offered except the testimony of the doctors who gave their opinions in response to hypothetical questions.

MR. JUSTICE McSURELY dissenting: In my opinion the trial court, in allowing the motion for judgment notwithstanding the verdict, based his conclusion solely upon the fact that the insured was found dead in the water, ignoring the conflicting opinions of the testifying physicians as to the cause of the death. "On such a motion, the court is not authorized to weigh the evidence." *Valant v. Metropolitan Life Ins. Co.*, 302 Ill. App. 196 (citing cases).